UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| FLYING J INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 1:07-CV-237 RM |
| ) | |
| CITY OF NEW HAVEN, INDIANA, a ) | |
| political subdivision of the State of ) | |
| Indiana, BRIAN YOH, individually and as ) | |
| Plan Director and Zoning Administrator ) | |
| of the City of New Haven, TERRY E. ) | |
| MCDONALD, individually and as Mayor of ) | |
| the City of New Haven, ) | |
| JOHN & JANE DOES 1-15. ) | |
| ) | |
| Defendants ) | |

## OPINION AND ORDER

On September 25, 2007, Flying J Inc. filed an amended complaint under 42 U.S.C. § 1983 alleging that the City of New Haven and its officials engaged in an orchestrated campaign to deny it equal protection under the Fourteenth Amendment and equal protection and due process under the Indiana Constitution. The defendants moved to dismiss Flying J's federal claim for lack of subject matter jurisdiction or, alternatively, for failure to state a claim for relief under Federal Rules of Civil Procedure 12(b)(1) and (6). The defendants also ask the court to decline to exercise supplemental jurisdiction over Flying J's state claims. For the following reasons, the court grants the motion.

Flying J is a Utah corporation that owns and operates state-of-the-art travel plazas, which provide a variety of services, including food, fuel, groceries, financial

services, and other amenities to truck drivers and other travelers. At issue is a 53.3-acre site located in New Haven, which Flying J has acquired for the purpose of developing a travel plaza. The property is located in a C-1(P), General Commercial Planned District,[1] which allows a variety of commercial uses, including automobile stations, stores, businesses, general retail, food service, motels and other uses. Flying J proposed to develop the site to include not only the travel plaza (which would utilize 17.7 acres of the total property), but also additional retail commercial uses, including such things as hotels, additional sit-down restaurants, and other appropriate uses.

In early 2005, Flying J's representatives made an initial presentation to Mr. Yoh, as the Plan Director and Zoning Administrator for the City. On March 4, Mr. Yoh informed Flying J that he believed some of the uses proposed to be included in the travel plaza would not be permitted in a C-1 Zoning District. Flying J appealed this decision to the City of New Haven Board of Zoning Appeals. After a public hearing, the Board affirmed Mr. Yoh's decision. Flying J then appealed the Board's decision to the Allen Circuit Court which, on September 23, granted summary judgment for the Board. One year later, the Indiana Court of Appeals reversed the Circuit Court's decision and remanded the case with instructions to enter summary judgment in Flying J's favor. The court of appeals concluded that all of the uses attendant to the proposed travel plaza are permitted in the C-1

---

[1] Flying J states that the uses permitted under the Zoning Ordinance in the C-1 Zoning District and the C-1(P) Zoning District are identical, with the distinction between such zoning districts being immaterial for the relief sought in its complaint.

2

Zoning District under the zoning ordinance.

The Board filed a petition for rehearing, which the court of appeals denied on January 10, 2007. The next month, the Board filed a petition to transfer to the Indiana Supreme Court, which was denied on May 3, making the court of appeals' order final. After the court of appeals' initial decision, Flying J's representatives flew from Utah and met with Mr. Yoh, Mr. McDonald and other city officials to discuss moving forward in light of the ruling. Flying J's attorneys and engineers in Indiana also regularly communicated with city officials, including Mr. Van Gilder, about developing the travel plaza through late 2006 and the first half of 2007. During those meetings and discussions, no one advised Flying J that city officials were concurrently moving forward to amend the zoning ordinance in a manner that could prohibit Flying J from developing the property for use as a travel plaza.

Nonetheless, following the court of appeals' decision, city officials amended the text of the zoning ordinance to limit the area of a "service station," including "accessory uses," to two acres in the C-1 Zoning District. This amendment used an area that wouldn't impact any existing service station in the City. The Plan Commission conducted a public hearing on the proposed amended ordinance on February 20, with Flying J and its representatives receiving no notice. The Common Council of the City of New Haven considered the amended ordinance at its regular meeting on February 27. Mr. McDonald and Mr. Van Gilder participated in the presentation and discussion of the amendment. The Council

3

voted unanimously to adopt the amended ordinance at the first and second readings. Flying J wasn't given notice of this meeting. About two weeks later, the Council voted unanimously to adopt the amended ordinance at the third and final reading. Again, Mr. McDonald and Mr. Van Gilder were present and Flying J wasn't given notice.

Flying J first learned that the amended ordinance had been adopted on or about June 6, when the Board, through Mr. Van Gilder, filed a motion to correct error with the circuit court in an effort to modify its order granting summary judgment for Flying J, by affirmatively stating that the travel plaza was a "permitted use" only under the zoning ordinance in effect in 2005. Although the circuit court denied the Board's motion, Mr. Yoh and the City intend to apply the amended ordinance to Flying J's proposal made in 2005, and to any future proposal by Flying J. The Board has also filed a notice of appeal of the circuit court's order denying its motion to correct error.

Flying J alleges that the defendants have: (1) engaged in an orchestrated campaign to prevent Flying J from developing the travel plaza by engaging in costly and protracted litigation, (2) after losing the litigation, conceived a scheme to circumvent the decisions of the Indiana appellate courts by passing a selective, discriminatory amendment of the zoning ordinance without notice to Flying J, and (3) applied the amended ordinance to Flying J in a selective discriminatory, and unfair manner. Flying J alleges that these actions violate its right to equal protection under the Fourteenth Amendment of the United States Constitution,

4

and its equal protection and due process rights under Article 1 Section 23 of the Indiana Constitution, and seeks declaratory relief on all claims.

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) (internal citations omitted). A motion to dismiss tests the complaint's sufficiency, not its underlying merits, see Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990), and the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in the plaintiff's favor. Slaney v. The Int'l Amateur Athletic Fed'n., 244 F.3d 580, 597 (7th Cir. 2001). A complaint needn't be detailed, but must contain sufficient factual allegations to provide a ground for relief. Bell Atl. Corp., 127 S.Ct. at 1964-65.

The defendants first argue that Flying J is trying to disguise an alleged takings claim as an equal protection claim and so evade the Williamson ripeness rule. Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 186, 194 (1985), held that a takings claim isn't ripe until the plaintiff has obtained a final decision from the government entity charged with implementing the regulations regarding the regulations' application to the property at issue, and the plaintiff also avails itself of state law procedures for seeking just compensation. *See* Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000) (Williamson "precluded federal courts from adjudicating land use

5

disputes until: (1)the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." Federal courts have subject matter jurisdiction over only those takings claims for which the Williamson requirements have been satisfied or otherwise excused. Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 957-958 (7th Cir. 2004).  Whether such a claim is labeled as an equal protection claim or a takings claim, it is subject to the Williamson ripeness standards. Patel v. City of Chicago, 383 F.3d 569, 570 (7th Cir. 2004).

    The defendants argue that Flying J jumped the gun by bringing this action in federal court before the Board of Zoning Appeals had heard Flying J's request for a variance. The defendants also contend that Flying J's amended complaint doesn't allege that Flying J has sought compensation for the alleged deprivation of its property rights in any Indiana court.

    Flying J responds that its complaint doesn't allege a takings, but instead asserts a *bona fide* equal protection claim not subject to the Williamson ripeness requirements, based on the City of New Haven's improper and discriminatory conduct. The court of appeals has held that equal protection claims arising from land-use decisions can be made independently from a takings claim and without the Williamson ripeness requirement. Forseth v. Village of Sussex, 199 F.3d at 370. "Absent a fundamental right or a suspect class, to demonstrate a viable equal protection claim in the land-use context, the plaintiff must demonstrate 'governmental action wholly impossible to relate to legitimate governmental

6

objectives.'" Id. At 370-371 (*quoting* Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995)). The Forseth court outlined two ways in which a plaintiff could show a *bona fide* equal protection claim as opposed to a re-labeled takings claim: "(1) the malicious conduct of a governmental agent, in other words, conduct that evidences a spiteful effort to get him for reasons wholly unrelated to any legitimate state objective, or (2) circumstances, such as prayer for equitable relief and a claim [that] would evaporate if the [governmental body] treated everyone equally." Forseth v. Village of Sussex, 199 F.3d at 371 (internal citations omitted).

Flying J alleges that the defendants' improper denial of its development plan, prior and ongoing litigation tactics, the covert drafting, notice and passage of the amended zoning ordinance solely to defeat Flying J's travel plaza and avoiding the result of years worth of litigation, and various attempts to prevent Flying J from developing the property it owns, all demonstrate the ill will and discriminatory intent sufficient to satisfy the standard for pleading such an equal protection claim. Because the court must accept all well-pleaded allegations as true and accept all reasonable inferences drawn from them, it appears that Flying J is asserting a *bona fide* equal protection claim as opposed to a re-labeled takings claim and so is not subject to Williamson ripeness requirements.

Anticipating this, the defendants argue that Flying J's claim should be dismissed under Rule 12(b)(6) because it cannot overcome the rational basis test applied to land-use equal protection claims. "Where neither an invidious classification nor a deprivation of a fundamental interest is alleged, the equal

7

protection clause requires only that the classification bear some rational relationship to legitimate governmental ends." Brown v. City of Lake Geneva, 919 F.2d 1299, 1302 (7th Cir. 1990). In applying this standard, courts presume the constitutionality of the government's classification. Wroblewski v. City of Washburn, 965 F.2d 452, 459 (7th Cir. 1992). "To overcome the presumption of rationality, then, a plaintiff must establish that the facts on which the legislature may have relied in shaping the classification could not reasonably be conceived to be true by the governmental decisionmaker." Id. (internal citations omitted). When applying the rational basis standard to a 12(b)(6) motion, courts must take as true all of the complaint's allegations and reasonable inferences that follow, while applying the resulting "facts" in light of the deferential rational basis standard. Id. at 460.

The amendment to New Haven's zoning ordinance limits the size of automotive service stations (and accessory uses) as a permitted use in New Haven's C-1 commercial zoning district. Any such service station may not exceed, including accessory uses and structures, two acres in size. The defendants argue that the amendment is rationally related to the legitimate government purpose of reducing the secondary impact of commercial development on adjoining landowners and the community. Larger structures and accessory uses raise legitimate "concerns such as traffic control, noise pollution, and a greater impact on the landscape." Vision Church v. Village of Long Grove, 468 F.3d 975, 1001 (7th Cir. 2006). The defendants further argue that there is no legal basis for Flying

8

J's theory that the amended ordinance somehow irrationally and unfairly favors existing service stations over Flying J or other landowners who may desire to build a service station in the future. The City amended its ordinance to allow two acres, which included all presently existing service stations and accessory uses, since to prohibit them would be an unconstitutional taking.

The defendants' reasons for amending the ordinance pass the rationality test. The City has a legitimate basis for limiting the size of business complexes. That the City chose to cap the size of such developments at 2 acres (well below the 53.3-acre site at issue) demonstrates its concern over the secondary impact of much larger structures. As for Flying J's assertion that the ordinance was amended solely with an eye toward thwarting their development is an argument of unequal enactment, not enforcement. Flying J hasn't alleged that the 2-acre limit has been enforced against it while other businesses received waivers.

An ordinance generally applicable on its face, but enforced against only an individual or class, may violate the equal protection class, Pro-Eco, Inc. v. Board of Commissioners of Jay County, Ind., 57 F.3d 505, 515 (7th Cir. 1995), but courts have found that legislative action can be taken in response to a specific problem or threat. The Pro-Eco court was presented with the argument that Pro-Eco was unfairly singled out for unfair treatment because it was the only company with its eyes on developing a landfill in Jay County when the Board declared a moratorium on landfills. Id. The court found that "legislatures may enact generally applicable legislation as a prophylactic to the danger posed by one particular actor

9

as long as the end of the legislation is legitimate and . . . the means are rationally related to the end." *See also* Northwestern University v. City of Evanston, 2002 WL 31027981, *6 (N.D. Ill. Sept. 11, 2002) ("[T]he City's Designation Ordinance, although motivated by concern over one particular actor, is generally applicable legislation which is rationally related to a legitimate government objective.").

Flying J argues that because its claim follows the "vindictive action" line of equal protection cases, it needn't pass the rational basis test at this point. In support of this position, Flying J cites Olech v. Village of Willowbrook, 160 F.3d 386, 387 (7th Cir. 1998), in which the plaintiffs alleged that the Village conditioned the connection of their home to the municipal water system on their granting the Village a 33-foot easement, which would allow their road to be widened, instead of the customary 15-foot easement needed to enable the servicing of the water main. The plaintiffs contended that this action was taken in retaliation for their suit against the Village for flood damage. Id. The court overturned the district court's dismissal of the action and found that the complaint stated a vindictive action equal protection claim without conducting the rational basis analysis. Id. at 388. Flying J also cites Leonard's Linen Service v. City of Bloomington, 2007 WL 925546 (S.D. Ind. March 26, 2007), in which the court found that a complaint was sufficient to support a vindictive action equal protection claim without conducting the rational basis review.

In Lauth v. McCollum, 424 F.3d 631 (7th Cir. 2005), however, the court of appeals clarified its opinion in Olech, stating that even in "class of one" cases,

10

plaintiffs must show that no rational basis exists for the legislation in question.

> A more promising approach and one that, incidentally, enables reconciliation of the two lines of class-of-one cases in our case law - the "animus" and the "rational basis" lines... -is simply to remind that a plaintiff who does not belong to any "suspect" (that is, favored) class- by definition, the situation of a class of one plaintiff- must, to prevail, "negative any reasonably conceivable state of facts that could provide a rational basis for the classification."

Lauth v. McCollum, 424 F.3d at 634 (*quoting* Board of Trustees v. Garrett, 531 U.S. 356, 367 (2001)). *See also* Vision Church, 468 F.3d at 1002. ("To establish a class of one claim, Vision must show that: (1) it has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment or the cause of the differential treatment is a totally illegitimate animus toward [Vision].") (internal citations omitted). The City's stated reason for passing the amended ordinance, i.e. to reduce the impact of large commercial development on landowners and the community, provides a rational basis for the classification.

Flying J contends that the ordinance was passed in retaliation for Flying J's state court victory, but if a rational basis for the legislation is provided, possible animus doesn't come into play. "Animus thus comes into play only when, no rational reason or motive being imaginable for the injurious action taken by the defendant against the plaintiff, the action would be inexplicable unless animus had motivated it." Lauth v. McCollum, 424 F.3d at 634. The defendants' motion to dismiss Flying J's federal equal protection claim is, therefore, granted.

Flying J's remaining claims for violations of equal protection and due

11

process under the Indiana Constitution don't state a cause of action under the federal civil rights statute, 42 U.S.C. § 1983. The only basis for bringing counts II and III in federal court is the court's supplemental jurisdiction under 28 U.S.C. § 1367, and the court declines to exercise jurisdiction over these claims. "The general rule is that when as here the federal claim drops out before trial(here way before trial), the federal district court should relinquish jurisdiction over the supplemental claim." VanHarken v. City of Chicago, 103 F.3d 1346, 1354 (7th Cir. 1997).

For the reasons stated above, the court GRANTS the defendants' motion to dismiss (Doc. No. 26) and DENIES the defendants' motion for hearing (Doc. No. 37) as moot.

SO ORDERED.

ENTERED:  April 28, 2008 

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court